[S. F. No. 13573. In Bank.—January 23, 1932.]

AMERICAN BUILDING MAINTENANCE COMPANY (a Corporation), Respondent, v. INDEMNITY INSURANCE COMPANY OF NORTH AMERICA (a Corporation), Appellant.

Hartley F. Peart, Gus L. Baraty and Russel Shearer for Appellant.

Miller & Thornton for Respondent.

CURTIS, J.—This is an action to recover upon public liability policy No. P. 6486, issued by the defendant insurance corporation to plaintiff corporation.

The plaintiff corporation was engaged in the business of supplying buildings with janitors, elevatormen, watchmen, window-cleaners, and other employees necessary for their care and maintenance. Through an insurance broker, Mullin-Acton Company, the plaintiff corporation placed its insurance with the defendant insurance company. This insurance brokerage firm, however, did not place all of the plaintiff's insurance business as plaintiff also did business through other insurance brokers. Two policies were issued by the defendant insurance company on February 17, 1925, one a public liability policy, which is the one here sued on, and the other a workmen's compensation policy. The printed portion of the public liability policy under the heading of "Exclusions" provided that, "This policy shall not cover loss arising from bodily injuries or death caused . . . *by any elevator* or other hoisting device. . . . " However, under the heading of "Description of trade, business or work covered by this policy" appeared the following statement of the operations of insured, that portion following the colon being typewritten: "A. All operations incidental to the trade, business or work described as follows: Buildings— operations (contractors) all employees engaged in care, cus-

tody and maintenance of premises, *the operation of elevators,* heating, light and power apparatus. . . . " (Italics ours.) By the terms of the policy the premiums were to be computed upon the basis of the entire compensation earned by employees of plaintiff corporation during the term of the policy, an estimated premium being paid in advance, and either an additional payment being subsequently paid by the plaintiff company at the termination of the term of insurance, or a refund of the excess premium returned to the insured. The record does not show whether the estimated advance premium of $75 which was deposited was paid by the plaintiff corporation or was advanced by the insurance broker, but this, of course, is not material. It is the claim of the defendant insurance corporation that it never intended to assume, in the public liability policy, any liability arising from the operation of elevators and that such liability was included therein through an error of a typist in its office who by mistake copied into the declarations attached to the public liability policy provisions similar to those contained in the workmen's compensation policy, which error was not detected by the agent having charge of the signing of the policies. In any event both the public liability policy and the workmen's compensation policy were delivered to the plaintiff corporation. Shortly thereafter, a rider was prepared by the defendant insurance company with the object of eliminating this liability from the public liability policy issued to plaintiff company. The evidence with reference to this rider is extremely meager. Apparently it was given by the defendant insurance company to a messenger to be taken to the office of Mullin-Acton Company, the insurance brokers placing the insurance, but there is no evidence that any letter of transmittal accompanied it. In fact, the attorney for the defendant stated that he understood letters of transmittal never accompanied these riders. Mr. Mullin of the firm of Mullin-Acton Company, who personally conducted the negotiations with the representative of the insurance company, testified that he had never received the rider and that the first time he had any knowledge of its existence was when the defendant insurance company disclaimed liability under the policy upon the ground that the liability for elevator accidents had been

eliminated by the rider. Mr. Rosenberg, the president and general manager of the plaintiff corporation, likewise denied any knowledge of the rider, and testified that it had come to his attention subsequent to the time the case came to trial. The attorney for the plaintiff offered to stipulate that the rider had been received by some stenographer employed by the plaintiff corporation and was by mistake filed with and attached to the workmen's compensation policy which, as before noted, had been issued by the defendant insurance company on the same day. The rider reads as follows: "It is hereby understood and agreed that classification #9014— Building-operation (contractors) all employees engaged in care, custody, and maintenance of premises, the operation of elevators, heating, lighting, and power apparatus; excluding extraordinary additions, alterations and repairs—is entirely eliminated and that the following classification is substituted in lieu thereof; Payroll Rate per $100 Operation, care, custody and maintenance of buildings—Varies, $.10 Nothing herein contained shall vary, alter or extend any provision or condition of the policy other than as above stated. This endorsement becomes effective on the 17th day of February, 1925. Attached to and hereby made a part of Public Liability Policy No. P. 6486 of the Indemnity Insurance Company of North America, issued to American Building Maintenance Co."

On March 25, 1925, while the elevators were being operated by operators furnished by plaintiff corporation, an accident occurred in the Santa Marina building in San Francisco in which one Charles Heliker, a minor, was killed by one of said elevators.

The plaintiff advised the defendant insurance company of the accident and that as the defendant insurance company was liable under public liability policy No. P. 6486, it would expect the defendant company to undertake the defense of the suit instituted by the father of said minor for damages for the death of his son. The defendant insurance company denied liability under the public liability policy and plaintiff's attorney conducted the defense. Judgment was rendered against plaintiff and the Santa Marina Corporation, owner and operator of the Santa Marina building. The plaintiff corporation settled the judgment against it by the

payment of $2,500, plus the costs of suit. It is for the recovery of the amount paid out in this former action that this action was instituted by the plaintiff corporation against the defendant corporation. Judgment was entered in favor of the plaintiff corporation, from which judgment the defendant insurance company appeals.

Appellant contends: First, that the policy on its face expressly excluded from its provisions and protection loss arising from the operation of elevators; and secondly, that the policy was modified three days after it was issued by a rider expressly eliminating the operation of elevators from the declaration.

The first contention requires little consideration. The very fact that the defendant insurance company thought it necessary to issue a rider in order to eliminate this coverage indicates a belief on its part that loss arising from the operation of elevators was included in the policy. There is some ambiguity and uncertainty in the policy by reason of the fact that in the printed portion of the policy under "exclusions" was the provision that "this policy shall not cover loss arising from bodily injuries or death caused by any elevator or other hoisting device", whereas, in the typewritten portion of the policy was a provision that the policy covered all operations incidental to the business or work of the insured which included all employees engaged in the operation of elevators. It is scarcely necessary to reiterate the rule, so frequently applied in similar situations, requiring all uncertainties and ambiguities in a policy of insurance to be resolved against the insurer. (14 Cal. Jur., p. 443; *Narver* v. *California State Life Ins. Co.*, 211 Cal. 176 [71 A. L. R. 1374, 294 Pac. 393].) Moreover, section 1651 of the Civil Code expressly and explicitly provides that, "where a contract is partly written and partly printed, or where a part of it is written or printed under the special directions of the parties, and with a special view to their intention, and the remainder is copied from a form originally prepared without special reference to the particular parties and the particular contract in question, the written parts control the printed parts, and the parts which are purely original control those which are copied from a form. And if the two are absolutely repugnant, the latter must be

so far disregarded." Without any question, therefore, the public liability policy as prepared by the defendant insurance company and delivered to the insured covered any loss arising from the operation of elevators. Moreover, at the time of the issuance of the policy an estimated advance premium adequate for the coverage of this liability was paid by the insured or the insurance broker on its behalf. In a suit, therefore, predicated solely upon this policy, clearly the plaintiff corporation was entitled to recover.

In its answer the defendant insurance company alleged that the policy did not express the actual understanding and agreement of the parties, but that the policy in question was made, issued and delivered to the plaintiff under and by reason of the mutual mistake of both parties. The trial court expressly found that said policy of insurance was not issued by mutual or other mistake, but that the same correctly covered the operations for which said plaintiff company had applied to said defendant insurance company. The terms of the written contract, considered in conjunction with the fact that an adequate premium was advanced, furnish ample support for this finding. It may be conceded, perhaps, that the defendant insurance company did not in fact intend to assume liability for this particular loss and that it was through an error on the part of an employee that the liability was covered by the policy. This may be inferred from the fact that shortly after the issuance of the policy a rider was in fact prepared eliminating this liability. At most this was merely a unilateral mistake, and furthermore the mistake of the party preparing the contract. Having received the policy from the defendant insurance company, and having paid a consideration therefor, the plaintiff corporation was entitled to rely upon the express agreement as expressing the mutual understanding of the parties, and the defendant company after the loss had occurred which was covered by the express terms of the policy was bound by those terms.

By the express terms the policy provided that it could be canceled "at any time by either of the parties upon written notice to the other party stating when thereafter cancellation shall be effective", and that "notice of cancellation mailed to the address of the assured herein shall be sufficient notice". Upon discovery of its mistake, therefore, the

defendant company could have canceled the policy and relieved itself of further liability and, according to the language of the policy, apparently if it had elected to do so a notice mailed to the address of the insured would have been sufficient. It would seem, however, in view of the fact that if a notice is sent by mail but not received the cancellation is ineffective (*Farnum* v. *Phoenix Ins. Co.*, 83 Cal. 246 [17 Am. St. Rep. 233, 23 Pac. 869]), that self-interest would prompt an insurance company to make definitely certain the fact that the notice was actually received. In the instant case, however, the defendant insurance company made no effort to cancel the policy, but instead elected to modify its terms to conform to its wishes by issuing a rider to be attached to the policy.

It is well settled that policies of insurance are written contracts between the parties and are governed by the same rules which are applicable to contracts generally. (*Boyer* v. *United States F. & G. Co.*, 206 Cal. 273, 276 [274 Pac. 57]; *Bassi* v. *Springfield Fire etc. Ins. Co.*, 57 Cal. App. 707 [208 Pac. 154].) So, also, the modification of a contract of insurance is governed by the rules which are applicable to contracts generally and the same elements essential to the validity of the original contract are essential to a modification thereof. (*Bassi* v. *Springfield Fire etc. Ins. Co., supra.*) These essential elements, the presence or absence of which determine the existence of the contractual obligation as enumerated by the Civil Code, section 1550, are: (1) Parties capable of contracting; (2) their consent; (3) a lawful object, and (4) a sufficient cause or consideration.

We are of the opinion that the second essential element enumerated is entirely lacking in the instant case. An analysis of consent shows two elements, namely, an offer or proposal and an acceptance. In the state of proof as shown by the record, we see no escape from the conclusion that the offer of modification never reached the person having authority to accept the same, and this being so necessarily there was no acceptance, no consent, and consequently, no binding contract. It is to be noted that the original contract had been completed and that the attempted modification was initiated by the insurer who thereby became the offeror. The issuance of the rider was an offer or proposal by the insurance company to the insured that the original contract

be modified as set out in the rider. The rider was not a notice to the insured that the contract was to be modified regardless of whether the insured was willing or not, but was a proposal to the insured which must be accepted by it before it became binding. We, therefore, have the situation of an offer which was never actually transmitted to the person having the authority to accept it. The offer failed to reach the offeree by reason of a mistake on the part of one employed by the offeree, but the burden of ascertaining that the offer actually reached the offeree was, we think, upon the offeror. The offeror merely because it had sent out an offer was not entitled to sit back and take for granted the fact that it had been received and had been accepted.

In the instant case the modification suggested was a vital and all important one as demonstrated by the fact that the original premium was estimated at $75, whereas the premium after the exclusion of the liability for elevator operations amounted to only $7.01, or approximately only ten per cent of the original premium. It is possible and quite probable that the insured would have preferred to have the entire public liability coverage in one company and would have canceled the entire policy rather than accept the modification. Apparently nothing was done by the offeror to see that the offer was actually received by the offeree. It was admitted that not even a letter of transmittal accompanied the rider, and no effort was made to ascertain whether or not the modification was acceptable to the insured.

The case of *Bassi* v. *Springfield Fire etc. Ins. Co., supra,* is similar in many respects to the instant case. In that case, which involved two fire insurance policies, the court held that a rider which had been attached to one of the policies by the agent of the insurance company some six months after delivery of the policies to the insured, which rider contained provisions by which the insured covenanted and agreed to keep his books and inventory of stock securely locked in a fireproof safe at night and at all times when the building mentioned in said policy was not actually open for business, was not binding upon the insured by reason of the fact that the insured did not understand the rider or agree thereto and no new consideration had passed

from the insurer to the insured. It likewise held with reference to the rider to the second policy sued on, which rider was sent through the mail with the request that it be attached to the policy, that said rider never became a part of the contract between the insurer and the insured by reason of the fact that the insured never agreed to put the rider on the policy and no new consideration passed for the acceptance by the insured of the conditions of the rider.

Since we have held herein that mutual consent was entirely lacking to the modification of the contract by the rider, it will not be necessary to go into the question of whether or not there was any or sufficient consideration for the modification. In the case of *Bassi* v. *Springfield Fire etc. Ins. Co., supra,* it was held that a mere forbearance to cancel the policy would not be a sufficient consideration for the modification of the contract of insurance by the attachment of a rider, in the absence of a binding agreement not to cancel. The defendant insurance company herein insists that a refund of $67.99 out of the advance premium of $75 which had been deposited by the insured or its broker with the defendant insurance company was a consideration for the modification. Inasmuch as it is an admitted fact that the defendant insurance company did attempt to modify the policy by means of the rider, we may take it for granted that this reduction in premium was actually made by the defendant insurance company and was made in good faith even though made subsequent to the accident. However, the refund was apparently made to the insurance broker, and it is doubtful whether this payment, or the giving of credit for the amount, would be binding upon the plaintiff corporation. In any event, in the absence of an acceptance of the proposed modification by the plaintiff corporation, the question of consideration becomes immaterial.

Appellant strongly relies upon the retention of the rider in the office of the plaintiff corporation as creating an estoppel against the plaintiff to deny the validity of the modification of the contract and the consequent elimination of the liability for elevator operations. In this regard appellant insists that it was misled by the silence of the plaintiff corporation into a belief that the plaintiff had acquiesced

in the modification and by reason thereof failed to cancel the policy of insurance. We do not think the doctrine of estoppel is applicable. It is to be noted that the claimed estoppel is based not upon an affirmative act on the part of the plaintiff corporation but upon silence or acquiescence. There is an entire absence of knowledge on the part of the plaintiff as to the facts upon which the estoppel rests and an entire absence of any wilfulness or culpability in the silence of the plaintiff. In *Weintraub* v. *Weingart,* 98 Cal. App. 690, 701 [277 Pac. 752], it was held that estoppel requires knowledge on the part of the person claimed to be estopped of the facts upon which the estoppel depends, and in *Lencioni* v. *Fidelity Trust & Sav. Bank,* 95 Cal. App. 490, 498 [273 Pac. 103, 106], the court held, "In estoppel, there must be something wilful and culpable in the silence which allows another to place himself in an unfavorable position on the faith or understanding of a fact which the person remaining silent can contradict."

██  As a last resort appellant relies upon section 3543 of the Civil Code which provides that, "where one of two innocent persons must suffer by the acts of a third, he, by whose negligence it happened, must be the sufferer". The loss in the instant case will result not solely by virtue of the negligence of the plaintiff corporation, which negligence, if any, consisted in the employment of an employee who made a mistake, but from a combination of errors committed by the employees of both parties. The original mistake was committed by an employee of the insurance company who through error made the public liability policy correspond with the workmen's compensation policy, which error was perpetuated by the agent of the insurance company who signed and delivered the policy without detecting the error. There is nothing to indicate that even if the offer of modification had in fact reached the proper person in authority in the plaintiff's corporation, it would have been accepted, and this being so, it seems to us that, conceding plaintiff was negligent in employing an inefficient employee, in the final analysis, the loss to the defendant insurance company results from the failure of someone in the defendant's organization to check up and ascertain definitely whether or not such modification had been received and

had been acted upon by the plaintiff corporation. Obviously, there was negligence on both sides, and this being so the above code section has no application.

Our final conclusion is that the public liability policy of insurance as issued and delivered, unchanged and unmodified by the rider, was the existing contract at the time of the elevator accident, and that the defendant insurance corporation was liable thereunder.

Judgment is affirmed.

Langdon, J., Preston, J., Shenk, J., Richards, J., Waste, C. J., and Seawell, J., concurred.