[Sac. No. 5165. In Bank.—February 25, 1938.]

FRED NAIFY et al., Respondents, v. PACIFIC INDEMNITY COMPANY (a Corporation) et al., Appellants.

Jerome D. Peters and Cooley, Crowley & Supple for Appellants.

Bronson, Bronson & Slaven, Frank V. Campbell, T. L. Chamberlain, Conley, Conley & Conley, Nathan L. Coombs, Crosby & Crosby, Gerald M. Desmond, Geary & Geary, C. J. Tauzer, Griffin & Boone, Hadsell, Sweet, Ingalls & Lamb, Hoey, Hamilton & Turner, Keyes & Erskine, Hugh K. Landram, Mannon & Brazier, Neumiller & Dietz, O'Connor, Fitzgerald & Moran, Redman, Alexander & Bacon, Andrew R. Schottky, Wyckoff, Gardner & Parker, as *Amici Curiae,* on Behalf of Appellants.

J. Oscar Goldstein, P. M. Barceloux and J. M. McPherson for Respondents.

LANGDON, J.—This is an action by the injured party and the insured to recover on a policy of automobile liability insurance. Upon a trial by the court, plaintiffs had judgment and defendants appealed.

On October 15, 1932, plaintiff Naify contracted to purchase an automobile from defendant Pacific Nash Motor Company. A conditional sale contract was executed with the understanding that the same was to be financed by and assigned to defendant Pacific Finance Corporation, and that said defendant would procure a policy of insurance with defendant Pacific Indemnity Company, covering the respective interests of the seller and buyer. The payments called for by the conditional sale contract were $118.75 per month for 12 months, and this sum included *pro rata* payments on the insurance premium, which was thereby included in the total purchase price of the car. Upon the execution of the conditional sale contract on said date of October 15, 1932, the motor company obtained the insurance policy from the indemnity company, covering fire, theft, collision, property damage and personal liability. The motor company, seller, assigned the conditional sale contract to the finance corporation, and delivered the insurance policy to said assignee.

It is to be noted that the transaction was one in which Naify, the buyer, had no choice of insurance carriers, but was, under the agreement, obligated to pay the premium for insurance procured by the finance corporation in a company of its own selection. It further appears that no copy of the policy was delivered to Naify, and he was given no information as to the terms thereof.

On July 18, 1933, the assured's brother, driving the car with the assured's consent, collided with a car driven by plaintiff Clark. Clark filed suit for damages. Naify gave due notice to the indemnity company of the accident and requested that the company undertake his defense. The indemnity company refused, stating that the policy coverage for public liability, property damage and collision had been cancelled on December 17, 1932, over six months previously. Clark secured judgment against Naify. The latter paid $300 on account, and thereupon both plaintiffs brought this action, Naify seeking reimbursement, and Clark demanding the balance due on the judgment by virtue of the statutory liability of an insurance company to an injured party after judgment.

The facts set forth by the defendants in opposition to this claim are as follows: On December 17, 1932, about two months after issuance of the policy, an officer of the indemnity company delivered a note to the manager of the insurance department of the finance corporation, stating that it had heard reports indicating that Naify was not a desirable risk, and requesting that the finance corporation recall the policy for cancellation. The finance corporation thereupon, according to the testimony on its behalf, mailed a letter to Naify stating that pursuant to instructions and in conformity with the policy it was cancelling his coverages, effective December, 1932; and that as legal owner of the car, it had instructed the indemnity company to remit the unearned premium not to Naify but to itself, which it would credit against the balance due on the contract. The letter was sent to the address given the insurance company by Naify's agent and stated in the policy; but it was not his true address and the letter was never received by Naify. He had no knowledge of the cancellation until the answer to his notification of the collision and request to defend, in July, 1933.

The policy provided that it was subject to cancellation at any time by the insurance company on five days' written notice; and it also contained the following provisions upon which defendants chiefly rely: "Notice of cancellation *mailed to the address* of the Assured stated in this policy shall be a *sufficient notice.* Where the term *Assured* is used in this paragraph it shall mean the *Pacific Finance Corporation of California* only during the time the Pacific Finance Corporation of California has any financial interest in the automobile

insured hereunder. If the Pacific Finance Corporation of California has no financial interest, then the term Assured shall mean the purchaser." Another provision in this same paragraph, upon which plaintiffs rely, reads: "*Notice of cancellation shall state that said excess premium* (if not tendered) *will be refunded on demand.*"

Before proceeding to a discussion of the legal issues, it may be well to review briefly just what was done by the parties. Plaintiff Naify, an automobile buyer, signed a contract agreeing to pay for the car *and for insurance coverage,* in installments. He performed both obligations fully. The finance corporation, as assignee of the seller, collected the installments, including that part allocated to the insurance premium; and the indemnity company, insurance carrier, received its premium for the insurance coverage. Without the knowledge of the buyer, the insurance was purportedly canceled, and for over six months plaintiff Naify was left without protection for which he nevertheless *continued to pay,* and the payments were received and kept by one of the defendants. Meanwhile, though collecting the full premium and canceling all plaintiff's protection, the finance corporation was permitted by the insurance company to retain all coverage protecting itself, namely, fire and theft insurance.

Plaintiffs pleaded several causes of action, and the court found in their favor against all defendants. The theory of the judgment is that the three defendants acted in concert; that the conditional sale contract, the assignment, and the insurance policy were all included within a single transaction; that the notice of cancellation was ineffective; and that the defendants had agreed to insure Naify but left him unprotected. We are in full accord with the court's conclusion that plaintiffs should recover, and there are sound reasons for recovery against each of the defendants according to different inferences which may be drawn from the facts. But defendants argue that the judgment, as rendered, is inconsistent, in that it declares the insurance company liable on the policy, yet holds the other defendants liable for failure to keep the plaintiff insured. It is, of course, true that Naify could not be both insured and uninsured at the same time, and accordingly it is necessary to determine whether he was or was not, or, in other words, whether his policy was effectively canceled prior to the accident.

■ At the outset we are met with a question raised by *amici curiae* on behalf of various insurance companies, namely, whether a notice of cancellation, sent to the address of the assured as stated in the policy, and pursuant to a provision in the policy stating that the mailing thereof shall be sufficient notice, is effective despite lack of receipt by the insured. In this simple form, the question may perhaps be answered in the affirmative (see *Raiken* v. *Commercial Cas. Ins. Co.*, (N. J.) 135 Atl. 479), though it has not yet been directly ruled upon in this jurisdiction. (See *American Building Maintenance Co.* v. *Indemnity Ins. Co.*, 214 Cal. 608 [7 Pac. (2d) 305].) But the special circumstances of this case make such a doctrine entirely inapplicable. Ordinarily the insured chooses his company and his policy; here the insured had no choice but to accept the selection of the seller. Ordinarily the insured receives his policy and is for this reason presumed to have read it; here the insured did not receive either the policy or a copy of it; and none of the provisions relied upon here was brought to his attention. Ordinarily, when the insurance company cancels a policy, it gives notice, by whatever method is chosen, to the insured; here the insurance company did not notify the insured buyer, but merely the insured seller, and it was the latter who is supposed to have notified the plaintiff. Ordinarily, the notice given complies with the policy requirement of tendering the unearned premium; here the notice did not do so. Finally, the normal effect of repudiation of a contract and refusal to perform on one side is the excuse of performance on the other side; here the insurance company purported to terminate its obligations to the insured, but performance by the insured continued, and the *pro rata* payments on the premium were still accepted. In the light of these facts, can it be said that the policy was canceled by a mailed notice not received by the insured? We think not.

■ But if we assume the applicability of the provisions for mailed notice, defendants must show a strict compliance with its terms in order to effect a cancellation. (*B. & B. Trucking, Inc.*, v. *Home Fire & Marine Ins. Co.*, 125 Misc. 312 [209 N. Y. Supp. 511], aff. 216 App. Div. 710 [214 N. Y. Supp. 812], Id., 243 N. Y. 558 [154 N. E. 604]; *Levan* v. *Pottstown etc. Ry. Co.*, 279 Pa. 381 [124 Atl. 89]; *Fox* v. *Connecticut Fire Ins. Co.*, (Mo.) 268 S. W. 393; *Nederland Life Ins. Co.* v. *Meinert*, 127 Fed. 651.) ■ They have

not done so, for neither of the two notices relied upon was sufficient. The first, the letter mailed by the finance corporation to plaintiff Naify, was fatally defective. The policy provides that notice shall state that the excess premium will be refunded on demand. The letter contained no such statement. Instead, the finance corporation, seeking to improve its position as holder of the conditional sale contract, stated " . . . we have instructed the Pacific Indemnity Company to remit the unearned premium to us and when it is received, we will credit it against the balance due on your contract . . . " In other words, it baldly informed the insured that although the insurance company was remitting the unearned premium, it (the finance corporation) was appropriating the sum to its own use for a period of some six months, following which it would give the insured credit for the same on another obligation, the last payment due on the car. To the extent that it collected *pro rata* premium payments and diverted them to other uses the finance corporation was guilty of conversion, and still more obviously of a breach of the plain provisions of the policy. Hence, in so far as the insurance company seeks to establish cancellation through the agency of the finance corporation, by means of the letter sent to Naify, its position is untenable.

The second theory advanced is that cancellation was effected by the prior letter of the insurance company to the finance corporation, which states: "Kindly recall policy for cancellation." Defendants point to the provision of the policy that the finance corporation shall be deemed the *assured* while it has any interest in the automobile, and assert that it was proper to terminate Naify's policy by notice to the finance corporation alone. Were the validity of this provision squarely presented, we would have serious doubts thereon. Parties are, within reason, free to contract as they please, and to make bargains which place one party at a disadvantage; but a contract must have mutuality of obligation, and an agreement which permits one party to withdraw at his pleasure is void. (*Shortell* v. *Evans-Ferguson Corp.*, 98 Cal. App. 650 [277 Pac. 519]; Williston, Contracts, 2d ed., sec. 104.) By analogy, it seems questionable whether a contract can validly provide that A is bound thereunder unless B decides to withdraw, and that B's notice of withdrawal may be given to X, a third party who is not A's agent, and who in fact occupies two positions antagonistic to A: a creditor of

A, and an agent of the adverse party. The only basis upon which such withdrawal could be justified would be that X was authorized by A to act as his agent to cancel the contract; that is, that the finance corporation was authorized by Naify to act as his agent in canceling the policy. ▮ It is elementary that actual agency must rest on agreement or consent. (Restatement, Agency, sec. 15.) What if the policy made such a provision, a point not free from doubt? Naify never saw the policy, his attention was never called to the provision, and therefore it cannot be said that he agreed to such an agency. (See *Los Angeles Inv. Co.* v. *Home Sav. Bank*, 180 Cal. 601 [182 Pac. 293, 5 A. L. R. 1193].) Does the conditional sale contract, which Naify signed, so provide? Clearly it does not; it states only that the finance corporation may procure insurance, but it gives no inkling of a proposed extraordinary agency in the finance corporation to cancel Naify's insurance. It is impossible, therefore, to find any factual or legal basis for the asserted right of the insurance company to cancel by giving notice to the finance corporation.

▮ We may, however, assume for the moment that the provision authorizing notice to the finance corporation alone was binding on Naify despite his total lack of assent thereto. Still defendants cannot prevail, for this notice, like the other, failed to comply with the provisions of the policy. In the first place, the letter to the finance corporation was not a notice of cancellation, but a request that the corporation recall the policy for cancellation. The finance corporation was thereby made agent of the insurance company to procure the policy, and neither in terms nor in effect was this letter a notice of cancellation. Indeed, it is shown in the record that the purported assured here, the finance corporation, did not suffer any cancellation of its coverages, and that the whole purpose of the letter was to have the finance corporation give *actual notice* of cancellation of the coverages of Naify. In the second place, even if the letter might be construed as an actual notice of cancellation, it was, like the letter to Naify, utterly lacking in a statement that the unearned premium would be repaid on demand. It is suggested by defendants that this requirement could be waived by the finance corporation, but inasmuch as the letter is relied upon to effect a cancellation of Naify's coverages, only he could waive compliance with the requirement. If this were not true, then the insurance company could cancel at will, with-

out five days' notice, or without any notice, and its so-called "assured", the finance corporation, having fully protected itself, could "waive" all the policy requirements as to Naify. We find nothing either in the policy or the conditional sale contract which gives any such extraordinary authority to the finance corporation. The contract merely authorizes the seller to keep the property insured in a company or companies selected by it, and obligates the buyer to pay the premiums. It is impossible to construe it as an authorization of the seller or its assignee to collect the premiums and contemporaneously to "waive" all of the buyer's rights under the policy.

We conclude, therefore, that the insurance policy was in full force and effect at the time of the accident, and that plaintiffs were entitled to recover under its terms. This being so, it would appear that the defendant finance corporation cannot be held liable on the theory that it failed to keep plaintiff Naify insured. It may be true, as indicated by the trial court, that all of the defendants acted in concert in an attempt to deprive Naify of his insurance coverage, but since, under our holding, the attempt was unsuccessful, plaintiff suffered no appreciable damage therefrom. In short, defendant finance corporation would undoubtedly have been liable in the full amount of the loss sustained by Naify, if the policy had actually terminated while it continued to collect premium payments therefor, but the conclusion that the policy was not terminated is inconsistent with such liability.

All defendants were, however, properly joined in the action in an attempt to discover which was liable for plaintiff's claims; and since all denied and contested plaintiffs' rights of recovery under the policy, none should recover costs.

The judgment against defendant Pacific Indemnity Company is affirmed, with costs to respondent. The judgments against defendants Pacific Nash Motor Company and Pacific Finance Corporation are reversed, neither party to recover costs.

Curtis, J., Houser, J., Shenk, J., Waste, C. J., and Seawell, J., concurred.