[Civ. No. 14003.   Second Dist., Div. One.   Aug. 27, 1943.]

IRWINDALE   CITRUS   ASSOCIATION   (a   Cooperative
    Marketing  Association), Respondent, v. GEORGE  C.
    SEMLER, Appellant.

Henry O. Wackerbarth for Appellant.

R. B. Bidwell and Tscharner & Miller for Respondent.

YORK, P. J.—This is an appeal by defendant Semler from a judgment in favor of plaintiff, a cooperative marketing association, in an action to recover liquidated damages alleged to be due under the terms of a marketing agreement, by reason of plaintiff's failure to deliver his 1939 crop of Valencia oranges to plaintiff for handling and marketing, pursuant to the terms of said agreement.

Appellant also seeks a review of the order denying his motion for a new trial, and has filed in this court an application for leave to file additional evidence.

The record herein reveals that on or about April 9, 1937, respondent association and appellant executed an agreement, under the terms of which appellant agreed "to pick, haul and deliver" to the association's packing house at Irwindale, "for the purpose of packing and marketing, all the oranges now growing upon his lands, and all that may, during the term of this agreement, be grown upon his lands, or any other lands rented by him which are situated in the district served by this association . . . at such time or times and in such quantities as directed by the association.

"And the association, in consideration thereof, agrees to receive, pack and market all of said fruit whenever a market may be found for the same which in the judgment of the association and in accordance with its rules and regulations, shall justify such marketing and shipment; and to pay the

grower the amount received for said oranges, less the charges which it may have against the grower, as provided by its by-laws.''

It was further provided that said agreement should remain in effect ''during all times that the grower is a member of the association,'' and also provided that the grower might terminate the agreement by filing a written notice of his desire so to do with the secretary of the association at any time during the month of November of any year during the term. The by-laws of the association were made a part of said agreement, which covered ''10 acres of Valencias located at 1100 Cypress Ave., South side, East of Lark Ellen'' in the Irwindale district.

The parties to the contract operated thereunder during the years 1937 and 1938. During the year 1939 a writ of attachment issued directed against the 1939 crop of oranges on the said ten acres of appellant, in the case of Ringer v. Semler, and in connection therewith appellant released the sheriff from any liability arising by reason of the sale of said crop by him (the sheriff) to the Granada Packing House.

It also appears, that while said crop was under attachment, the board of directors of said association refused appellant's request to release the fruit, although appellant offered the equivalent number of boxes of oranges from a grove he owned across the street, the fruit there averaging one size smaller than that on the ten acres covered by the contract.

The instant action was initiated in the Municipal Court of Los Angeles seeking a judgment for $1,250, being 25c per box of a 5,000-box crop allegedly sold outside the association. Appellant counterclaimed and cross-complained for damages aggregating $7,696.96, whereupon the cause was transferred for trial to the superior court which entered judgment for respondent in the amount of $946 and costs.

Appellant lists his contentions on this appeal as follows:

''1. The Consignment contract was void for lack of mutuality of obligation.

''2. Semler never became a member of the association.

''3. Semler did not withdraw, sell or market any fruit outside the association.

''4. The association cannot recover because there is no showing that the market justified the picking of Semler's fruit.

"5. Plaintiff is not entitled to recover a penalty because it was first to breach the contract.

"6. It would be inequitable, unfair and unjust to require Semler to pay a penalty.

"7. The association never authorized the filing of this action.

"8. The court did not give proper credit on defendant's counter-claim.

"9. The court erred in denying defendant's motion for a new trial."

■ Appellant's main contention is that the marketing contract is void for lack of mutuality of obligation for the reason that "the grower is unconditionally bound, but the association is bound only in the event it can find a market which, in its judgment, shall justify such marketing and shipment. . . ."

Said marketing agreement specifically provides that the "by-laws of the association shall be and are hereby made a part of this agreement." Subdivision 4, section 5, article IV of the association's by-laws provides: "4. The Board of Directors shall cause to be made all necessary provisions for the handling, packing, and shipping of the fruit of members, and shall pack, ship, and sell the same to the best advantage and for the best interests of the members." It would therefore appear that the association was bound to pack, ship and sell to the best advantage and for the best interests of its members the fruit delivered to it by the latter. And the fact that the association reserved the right "to receive, pack and market all of said fruit whenever a market may be found for the same which in the judgment of the association and in accordance with the rules and regulations, shall justify such marketing and shipment; and to pay to the grower the amount received for said oranges, less the charges which it may have against the grower as provided by its by-laws," does not destroy the mutuality of the contract. The very nature of cooperative marketing is such that the services expected of respondent association were fairly well established by the practices of the industry, and the "existence and life of the association itself depended upon its being furnished fruit to dispose of in the public market. A reduction in the amount

of fruit so handled would not only tend to increase the overhead cost to the nontransgressing members, but, we may assume, to some extent affect the prestige and standing of the association as a marketing concern." (*Anaheim C. F. Assn.* v. *Yeoman*, 51 Cal.App. 759, 763 [197 P. 959].) See, also, *Meyers* v. *Nolan*, 18 Cal.App.2d 319 [63 P.2d 1216].

It should not be overlooked that both parties to the instant action performed under the terms of the marketing contract for the years 1937 and 1938 and that the court found:

"Said contract and all provisions thereof were ratified, confirmed and acted upon by the plaintiff association and defendant Semler, during said period of time, and was and is a lawful contract binding and obligatory upon both parties thereto, was not lacking in mutuality, was performed and not breached by plaintiff, and was partially performed by defendant Semler. Said contract was acted upon and partially performed by defendant Semler until he breached same prior to the termination thereof."

The cases cited by appellant of *Naify* v. *Pacific Indemnity Co.*, 11 Cal.2d 5, 11 [76 P.2d 663, 115 A.L.R. 476], and *Shortell* v. *Evans-Ferguson Corp.*, 98 Cal.App. 650 [277 P. 519], holding that a contract which permits one party to withdraw at his pleasure is void for lack of mutuality of obligation, are not applicable to the facts presented by the instant litigation. In the Shortell case, an agreement to purchase real estate contained a provision to the effect that the owner reserved the right to return the purchase money at any time before a contract of sale for the property was signed. In the Naify case an insurance company cancelled an automobile liability insurance policy without the knowledge of the assured until after his automobile was involved in a collision.

In the instant case, the marketing agreement provided as follows: "That this agreement shall be and remain in full force and effect during all times that the grower is a member of the association; provided that the grower may terminate this agreement by filing a written notice of his desire so to terminate with the secretary of the association at any time during the month of November of any year during the term of this agreement." Section 4 of article II of the by-laws of the association provided: " . . . Any member shall have the right to resign from the association and termi-

nate his membership by filing with the secretary . . . at any time during the first fifteen days of the month of August a written resignation (sometimes called notice of withdrawal), which resignation shall become effective as, of and on the close of business on November 30th of the year presented, without any action on the part of the association; and at said close of business on said November 30th, said membership shall automatically terminate and end and the certificate of membership shall be deemed cancelled; provided that no such resignation or withdrawal . . . shall be effective for any purpose if the member who gives or files such notice shall, at such time when the membership would otherwise have terminated, be indebted to the association. . . .'' The hereinbefore quoted provisions of the marketing contract and by-laws clearly demonstrate that, instead of being able to withdraw at his pleasure, a member was required to comply with certain terms and conditions before his withdrawal became effective. An examination of the questioned contract, together with the by-laws of the association which expressly form a part thereof, fails to sustain appellant's contention that the contract is invalid for lack of mutuality of obligation.

As was so aptly stated in the case of *Anaheim C. F. Assn.* v. *Yeoman,* 51 Cal.App. 759, 763 [197 P. 959]: ''The association was organized for the purpose of the better handling of citrus fruits through the co-operative and joint efforts of its members. From the nature of the organization and the statement of its purposes as found in its articles and by-laws, it can be fairly and reasonably inferred that by the co-operation of its members, mutual advantages would accrue to all through greater economy in handling and shipping and the securing of more advantageous marketing facilities. These results would be dependent directly upon the performance by the members of their agreement to deliver the fruit into the hands of the association for the purposes declared.''

Appellant urges that he never was a member of the respondent association because the requirements for membership therein were not complied with either by him or by the association, therefore, the association is precluded ''from recovering a penalty for an alleged violation of the by-laws.'' Having partially performed his obligations under the contract for two seasons, appellant is now in no position to question the due execution thereof.

■ Appellant contends that the attachment excused him from the obligation to deliver his fruit to the association in 1939. "Where a party has agreed, without qualification, to perform an act which is not in its nature impossible of performance, he is not excused by the difficulty of performance, or by the fact that he becomes unable to perform. If a thing is possible in itself to be done—possible in the nature of things to be done—a positive contract to do it is binding though the performance is rendered impracticable, or even impossible, by some unforeseen cause over which the promisor had no control but against which he might have provided in his contract. . . . Except where prevention has been caused by the culpable negligence or other wrongful act of the promisee, it must be shown that the thing cannot by any means be effected. Nothing short of this will excuse nonperformance. The impossibility must consist in the nature of the thing to be done, and not in the inability of the party to do it; or, as it is sometimes said, it must be an impossibilitas rei as distinguished from an impossibilitas facti. If performance is possible, failure to perform is none the less a breach, although the obligor himself may have become wholly unable to perform. The Civil Code provides that 'Everything is deemed possible except that which is impossible in the nature of things.' " (6 Cal.Jur. 439, sec. 262. See, also, *Klauber* v. *San Diego Street-car Co.*, 95 Cal. 353, 358 [30 P. 555].)

■ Neither is appellant's contention that the respondent association permitted other members to sell fruit outside thereof entitled to consideration, because, as was stated in the case of *California Bean Growers Assn.* v. *Rindge etc. Co.*, 199 Cal. 168, 178 [248 P. 658, 47 A.L.R. 904] : "The allegation that one of the directors 'did not deliver his 1919 crop of beans to the association' and that 'no action has been commenced against him' does not state a ground of defense. The order in which actions may be commenced against defaulting members is immaterial." The record discloses that of the nine sales made outside of the association before appellant became a member thereof, seven were in the year 1933; that one of these members sold outside in 1934 and paid the penalty; that in 1933 the market was glutted and because of this, the association permitted the seven members to sell outside. Of the four sales made outside of the association during the time appellant was a member thereof, three were of fruit damaged by frost which was not saleable by the asso-

ciation. One sale was made outside after appellant severed his membership. No penalty for this infraction has as yet been collected, but neither has the time elapsed within which such penalty may be exacted of the defaulting member.

An examination of the record herein reveals ample evidence to support the findings, and also that the trial court properly denied appellant's motion for a new trial. Consequently, it is deemed unnecessary to discuss other points raised in this appeal.

Appellant has made application for leave to produce a "certified copy of a minute order made in that certain criminal proceeding now pending in the United States District Court of the Southern District of California, Central Division, entitled 'United States of America, plaintiff, vs. California Fruit Growers Exchange, et al, defendants, No. 15167', which said minute order consists of the record of a plea of nolo contendere entered in said proceeding on behalf of the California Fruit Growers Exchange to the charges set forth in the indictment rendered in said proceeding." This application is made on the ground that such additional evidence is material and affects the substantial rights of appellant, in that respondent "association would not be entitled to recover a penalty for failure to deliver the fruit grown by Semler on his orchard during the year 1939 in the event Irwindale Citrus Association proposed to sell or market said fruit through its agent, California Fruit Growers Exchange, in violation of Federal law."

No showing has been made that respondent association was even mentioned in the indictment in said federal action or that it was made a party defendant therein. Moreover, neither the indictment nor the plea of nolo contendere made in said action tends in any way to prove or disprove any issue involved in the instant litigation.

For the reasons stated, the application to produce additional evidence is denied; the judgment is affirmed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied September 24, 1943, and appellant's petition for a hearing by the Supreme Court was denied October 25, 1943.