[Civ. No. 18766.   Second Dist., Div. Two.   Feb. 18, 1952.]

PAUL COX et al., Appellants, v. HOLLYWOOD FILM ENTERPRISES, INC. (a Corporation), Respondent.

Wayne Veatch, Henry R. Thomas and Henry F. Walker for Appellants.

Raymond Wallenstein for Respondent.

MOORE, P. J.—On February 20, 1948, respondent by a writing subleased to appellants certain space in its Hollywood studios on Sunset Boulevard for a six-year term.  For

26 months appellants occupied and paid rent as sublessees. April 14, 1950, they notified respondent of their intention to vacate the premises, demanded $5,000 from respondent and 17 days thereafter removed their fixtures and equipment. They made no payment of rentals after such notice but instituted this action to recover $5,000 from respondent and contended that they were not obliged to pay the $200 monthly rent as provided by the sublease. Approximately one year thereafter, a controversy having arisen, the parties submitted the matter upon an agreed statement of facts and issues as follows:

## "Agreed Facts

"1. Plaintiffs are co-partners, doing business under the firm name and style of Coast Visual Education Company, in the County of Los Angeles, State of California.

"2. Defendant is a corporation duly organized and existing under and by virtue of the laws of the State of California, with its principal place of business in the County of Los Angeles.

"3. On or about February 20, 1948, plaintiffs, defendant and others entered into a certain 'Agreement for Sale of Corporate Stock, etc.', a photostatic copy of which is hereto attached and made a part hereof as Exhibit 'A'.

"4. Thereafter on the same day, to wit, February 20, 1948, plaintiffs and defendant entered into a written agreement entitled 'Sublease,' a true and correct copy of which is hereto attached and made a part of this stipulation as Exhibit 'B.'

"5. No considerations passed or were paid to either plaintiffs or defendant other than as expressed in said agreement for sale of corporate stock and sublease attached hereto as Exhibits 'A' and 'B,' nor did defendant receive a deposit, security or bonus for executing said sublease.

"6. Said Exhibits 'A' and 'B' were drawn by an attorney selected jointly by plaintiffs and defendant.

"7. Pursuant to the terms of said sublease, plaintiffs did occupy the certain premises described in said sublease in the building located at 6058-6060 Sunset Boulevard, Hollywood, California, from said date of February 20, 1948 until on or about May 6, 1950.

"8. Defendant did not at any time advise plaintiffs that it desired said premises, nor did it request plaintiffs to vacate said premises or to surrender or terminate said sublease.

"9. On or about April 14, 1950, plaintiffs notified defendant in writing that they intended to vacate said premises on May 5, 1950 and demanded the sum of $5,000.00 from defendant.

"10. On or about April 19, 1950, defendant notified plaintiffs that it rejected said demand for $5,000.00 and denied any indebtedness in any sum whatsoever to plaintiffs, and demanded the continued payment of the rent due under the terms of said sublease.

"11. Plaintiffs vacated said premises on or about May 6, 1950 without the request or consent of the defendant, nor did defendant at any time subsequent to said date of May 6, 1950 consent to or acquiesce in plaintiffs' act in vacating said premises.

"12. Said premises were vacant from said date of May 6, 1950 up to and including October 20, 1950. Plaintiffs did not pay to defendant rental payments of $200.00 a month due on the 20th day of the respective months of April to September of 1950, inclusive, as provided in said sublease.

"13. Plaintiffs have demanded said sum of $5,000.00 from defendant and defendant has refused to pay same.

"14. Defendant has demanded said sum of $1200.00 in rent from plaintiffs, and plaintiffs have refused to pay same.

"Issues

"The points in controversy, and upon which the decision of this court is requested, are as follows:

"1. Did the plaintiffs have the right to terminate said sublease and vacate said premises without the request of defendant or without first securing the consent of defendant?

"2. Is defendant obligated to pay to plaintiffs the sum of $5,000.00 under the provisions of said sublease and the foregoing facts as herein recited?

"3. Are the plaintiffs obligated to pay to defendant the sum of $1200.00, being the rental for the six months during which time said premises were vacant, and in addition thereto reasonable attorney's fees as provided under the provisions of said sublease and the foregoing facts as herein recited?"

The court duly filed its conclusions that "defendant is not obligated to pay plaintiffs $5,000 under the provisions of the sublease"; that "plaintiffs are obligated to pay to defendant the sum of $1,200" as rentals for the six months the premises were vacant and also "reasonable attorneys fees as provided under the provisions of said sublease." The ensuing judg-

ment directs recovery by respondent of $1,200 with interest and $350 attorney's fees. This appeal followed.

### RENTALS DUE FOR PERIOD OF VACANCY

Appellants' obligation to pay rent for the period the leased quarters were unoccupied is fixed by the sublease. By paragraph 2 of that instrument the lessee agrees to pay in advance "the monthly rental of $200" for each calendar month. By paragraph 15 it is provided that should lessee "default in the payment of any of the rent . . . at the time and in the manner herein specified . . . it shall be lawful for the Lessor to enter . . . remove all persons therefrom . . . and again to possess its estate . . . either with or without terminating this sublease." The only other provisions of the sublease relating to a termination of the tenancy are those of paragraphs 9 and 11. The 9th makes an end of the lease if the premises are wholly destroyed by fire or an act of God. Paragraph 11 authorizes lessor to occupy the premises and put an end to lessee's right of possession in the event of the latter's bankruptcy or other insolvency proceeding. Neither of those two paragraphs was by any covenant or event rendered inoperative prior to appellants' abandonment.

The only other language having to do with the closing of the relation of landlord and tenant is found in paragraph 14, as follows:

[1] "In further consideration for the making of this sublease, Lessee agrees in the event Lessor deem it necessary to have and occupy for its own purposes and business the premises and space leased and demised to Lessee herein, Notice in writing to that effect including notice to vacate and demand for possession will be given to Lessee hereunder and Lessee shall have thirty (30) months from and after the receipt of said notice to vacate and surrender up the premises demised hereunder."

[2] "In the event Lessee vacate and surrender to Lessor the herein demised premises within 30 months from the date of this agreement (February 20, 1948), whether the Notice provided for in the preceding paragraph be given or not, Lessee herein is to receive from Lessor $5000.00 in cash as a bonus and consideration therefor upon surrender of said premises to Lessor."

Sentence [1] one authorizes lessor at its option to terminate the sublease "in the event lessor deem it necessary" to occupy the space for its own business. But such authority may be

exercised only upon the happening of two events, namely, (1) the giving by lessor of written notice to lessee of its desire for possession to be used by lessor in its business; (2) service of a notice upon lessee to vacate. The only privilege accorded lessees by sentence [1] one is to continue their occupancy for 30 months after receipt of the notice to vacate. But in addition to such privilege, it is provided in sentence ■ two that if lessees vacate and surrender the demised premises within the 30 months from the date of the sublease they shall be paid $5,000 by lessor. Therefore, it is clear that under no circumstances are lessees authorized to terminate the lease or to cease paying rent during the six-year term in the absence of lessor's desire to occupy the space.

Appellants contend that the first words of sentence [2] two of paragraph 14 mean "in any event, if lessee vacate." Such interpretation is authorized by no known rules of construction. The phrase "in the event" has an established connotation. It is ubiquitously considered more polite than "if" and is by legalistic writers frequently used in lieu of the more popular word. If the phrase be transformed into that suggested by appellants, it would require lessor to pay lessees $5,000 in the event the building should burn down, or lessees be adjudicated bankrupts, or if they should cease to pay rent. The second [2] sentence is perfectly clear if we strike out the phase "whether the Notice provided for in the preceding paragraph [1] be given or not." It performs no office and serves only to becloud the context. With that phrase stricken the sentence could mean only: upon receipt of the notice mentioned in sentence [1] one, lessee might continue to occupy the premises for 30 months more and if the notice be served prior to the expiration of 30 months from date of the lease, lessee might surrender the premises and take the bonus of $5,000 for the waiver of the right of occupancy for a further 30 months after receipt of the notice.

The evident purpose of the *whether* clause was to provide for a contingency which might occur during the first 30 months of the lease-term, upon the happening of which lessor might desire the premises for some purpose other than for use of its film laboratory. Should such a contingency occur, lessor could not give the notice required by sentence one for that notice must announce that the premises are required for lessor's business. By no stretch of the imagination can any language in paragraph 14 be so construed as releasing appellants from the payment of rent during the six-year term.

Respondent never notified appellants that it desired the space for its own business. Since such demand by lessor coupled with notice to terminate the tenancy was the only demand or notice mentioned in the sublease and since that right was not asserted, appellants' tenancy and obligation to pay rent continued. Therefore, having without right abandoned the demised premises during their lease term, they owe rent for the six months during which the space was vacant. ▮ Where a covenant is susceptible of two or more constructions, one of which would make the contract unfair and another would make the instrument fair and just, the latter should be adopted. (6 Cal.Jur. 271, § 169.)

## The $5,000 Bonus Not Due Appellants

▮ The construction urged by appellants of paragraph 14 is no less than absurd. If they were correct, lessees would on the first day of their term have had the right to vacate and surrender the demised premises and collect a bonus of $5,000. If they were correct, there would never have been a contract by reason of the lack of mutuality. (*Fabbro* v. *Dardi & Co.*, 93 Cal.App.2d 247, 251 [209 P.2d 91]; *Alameda County* v. *Ross*, 32 Cal.App.2d 135, 145 [89 P.2d 460]; *Shortell* v. *Evans-Ferguson Corp.*, 98 Cal.App. 650, 660 [277 P. 519].)

▮ While parties are free to contract for a lease on such terms as they please, their efforts are futile if they choose such phraseology as permits one party to withdraw at his pleasure. Such a contract is void. (*Naify* v. *Pacific Indem. Co.*, 11 Cal. 2d 5, 11 [76 P.2d 663, 115 A.L.R. 476].)

▮ In the view of the sublease most generous to appellants, no consideration for the $5,000 bonus is to be found. They seek to strengthen their argument by invoking the terms of Exhibit A which was executed on the same day by five parties including appellants and respondent. Such efforts are unavailing. The sublease is a complete writing in itself and requires no illumination by any other document. Exhibit A[1] was composed primarily for the sale of securities. The implication that the $5,000 bonus was for a consideration

[1]Exhibit A was executed by five parties, to wit: Film Enterprises, Inc., first party; Carmel Productions, Inc., second party; William Horsley, third party; Cox, Thomas and Utz doing business as Coast Visual Education Company, fourth party; Thomas H. Emmett, fifth party. Respondent was indebted to appellants in the sum of $15,000 and to Horsley in a sum exceeding $34,000. The debt due Horsley was secured by a pledge on all the issued shares of respondent (1123), one half of which was owned by appellants, the other half by Emmett. Title of the stock was held by appellants and Emmett in equal shares. Carmel Productions,

passing to respondent pursuant to the terms of Exhibit A is wholly unwarranted. The argument that as of the date of the writings it was "most difficult to procure suitable rental places for conducting business" does not shed any such light upon the sublease as to render its own language unintelligible or to give it a meaning different from that which appears under the ordinary rules of construction. The contention that respondent requested appellants to surrender the premises at the time of executing, and by the terms of the sublease, is merely an assertion—as absurd as it is gratuitous. The agreement made by Exhibit A was complete for its purpose, but it is unthinkable that by any of its terms respondent agreed to pay appellants $5,000 if they would leave the premises within 30 months after date of the writing as a consideration for a transfer of the corporate stock of respondent. The second paragraph of Exhibit A is respondent's agreement to pay appellants $15,000 "in full payment." By the fifth paragraph it agrees to make a sublease of space in its premises to appellants for six years commencing February 20, 1948. There is not a suggestion that respondent asked for an immediate restoration of the space leased. On the contrary, the stipulation of facts contains the covenant: "Defendant did not at any time advise plaintiffs that it desired said premises, nor did it request plaintiffs to vacate said premises or to surrender or terminate said

---

.Inc. sought to acquire from appellants the shares owned by them. Thereupon the parties executed Exhibit A whereby appellants sold to Carmel 561½ shares for $30,000, payable in installments; respondent to pay its indebtedness of $15,000; Carmel Productions to assume debt of appellants owing to respondent and to procure for appellants a release from their liability to Horsley on a promissory note. In the FIFTH paragraph it was declared as follows: "First Party hereby agrees to make and deliver to Fourth Party herein, a sub-lease, upon certain space in the premises now leased by First Party from WILLIAM HORSLEY, Third Party herein, which said lease is to be in form customarily employed and shall provide: Said lease is to be for a period of six years duration, commencing February 20th, 1948 (unless sooner determined as hereinafter provided) at the monthly rental of $200.00; Fourth Party is to have the space now occupied by it in said premises aforesaid except that that portion of the building now occupied by Fourth Party as a shop is to be relinquished by March 20th, 1948 or before and in lieu thereof Fourth Party is to be permitted to occupy a space directly in the rear of its store now known as 'Mrs. Merollo's room.' In the event First or Second Party shall deem it necessary to occupy the premises so to be leased to Fourth Party thereunder, notice in writing to that effect shall be given and Fourth Party shall be given 30 months to vacate. Fourth Party should it vacate and surrender premises within 30 months from the date of this agreement from Febr. 20th, 1948. shall receive $5,000 as Bonus and Consideration therefor.''

sublease.'' All the terms of Exhibit A have been wholly executed.

The only light emanating from Exhibit A is that appellants owed respondent in some amount. This indebtedness was assumed by Carmel Productions under its arrangement with appellants. Respondent's debt to appellants was paid in full at the time. Not a word is found there or in any other passage of the Exhibit to indicate a plan or desire on respondent's part to make a gift of $5,000 to appellants or to release them from the obligation to pay the fixed rent. Moreover, paragraph 5 of the stipulation declares: ''No considerations passed or were paid to either plaintiffs or defendant other than as expressed in said agreement for sale of corporate stock and sublease attached hereto as Exhibits 'A' and 'B,' nor did defendant receive a deposit, security or bonus for executing said sublease.'' Since respondent received nothing from appellants as a consideration for the sublease other than the mutual promises expressed within it how can it be said that appellants can now demand $5,000 for their willfully and unceremoniously scorning a solemn obligation?

The second sentence of the fifth paragraph of Exhibit A as originally typed read as follows: ''In the event First or Second Party shall deem it necessary to occupy the premises so to be leased to Fourth Party hereunder, notice in writing to that effect shall be given and Fourth Party shall be given 30 months to vacate, and in this event Fourth Party is to receive $5,000.00 as consideration for their vacating said premises prior to the expiration of said 30 months.'' From that language it appears to have been intended that if respondent should deem it necessary to occupy the space leased to appellants, the latter must be so notified, and at the same time they were to have an additional 30 months' occupancy and to receive $5,000 as consideration for vacating prior to the expiration of the extra 30 months. By this original draft appellants were privileged to remain 30 months after notice that respondent required the space for its own use coupled with a demand to vacate, without regard to the date of such demand. Also, they were to receive the $5,000. The parties determined that such was not exactly their intention. To make use of the draft, they interlined it so as to limit appellants' right to collect the bonus only in the event of their surrender of the space during the first 30 months of the lease. The interlineation apparently prepared with extra care provides: ''Fourth party, should it vacate and surrender premises

within 30 months from the date of this agreement from Febr. 20th, 1948 shall receive $5,000 as a bonus in consideration therefor." Since the interlineation supplants the passage deleted, ("and in this event Fourth Party is to receive $5,000.00 as consideration for their vacating said premises prior to the expiration of said 30 months"), it must be interpreted in the light of undeleted typewritten words which the stricken portion modified in the original draft. Turning to the part that was left undisturbed just preceding the deletion, it is seen that the parties contemplated that respondent might "deem it *necessary to occupy the premises*," whereupon "notice in writing to that effect shall be given and fourth party shall be given 30 months to vacate." Since the necessity of respondent's need and desire for appellants to vacate was a fundamental condition for the latter to restore possession, their contention must fall in view of the fact that no notice was ever served by respondent that it desired the space and no demand was ever made for a restoration. Inasmuch as they agree that no demand for possession was ever made, no construction of the sublease is reasonable other than that the parties had in mind and planned for respondent's possible, future desire for the subleased space. In no part of the contract is there to be found in words or by implication that appellants would be privileged to cancel the lease on their own motion.

The judgment is affirmed with directions to the trial court to entertain respondent's motion for additional fees, provided application therefor be filed within 30 days after the filing of the remittitur. (*Oakland Cal. Towel Co.* v. *Roland,* 93 Cal.App.2d 713, 718 [209 P.2d 854].)

McComb, J., and Fox, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 17, 1952.