WILLIS C. PERRY *vs.* MANUFACTURERS NATIONAL BANK OF LYNN.

Essex.    January 3, 1940. — February 28, 1940.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Bills and Notes,* Alteration, Validity.    *Pledge.    Fraud.*

Conflicting evidence on the questions, whether a material alteration in a note was made with the assent of the maker, and whether it was made by the payee with fraudulent intent, required their submission to the jury in an action by the maker against the payee for conversion of collateral which the defendant sold upon nonpayment of the note; it would have been error to order a verdict for the plaintiff and was error to order a verdict for the defendant.

CONTRACT.    Writ in the Superior Court dated June 4, 1936.

The action was tried before *Morton,* J.

*C. F. Lovejoy,* for the plaintiff.

*J. W. Sullivan,* (*J. J. Leonard* with him,) for the defendant.

Cox, J.    This is an action for the conversion of shares of stock.    The answer alleges, among other things, that the stock in question was pledged as collateral for the plaintiff's debt; that, the debt being unpaid, the defendant rightfully sold the collateral and applied the proceeds to the payment thereof; and that the proceeds did not equal the amount of the debt.    The case was referred to an auditor whose report, together with other evidence, was introduced at the later trial before a jury.    The trial judge denied the plaintiff's motion for a directed verdict in a specified amount, and the plaintiff excepted.    The plaintiff also excepted to the allowance of the defendant's motion that a verdict be directed for it.    The bill of exceptions alleges that "The plaintiff's claim that the stock was converted depends upon the plaintiff's claim that prior to the time when the defendant took the stock the notes for which

the stock stood as collateral had been avoided by a material alteration."

The jury could have found that on January 1, 1933, the plaintiff owed the defendant on three demand notes a total of $68,499.82. In fact, the plaintiff admitted that "he got a total loan from the defendant of some $68,000 with collateral that skidded to $27,000, but that the collateral was adequate at the time the loans were made; the bank carried him for a couple of years while the market value of the collateral was less than the loan." Apart from the question of what might be due on account of interest, there appears to be no question as to the transactions culminating in the loans and the amounts due thereon. On April 1, 1931, the plaintiff owed the defendant $71,827.50 on notes, representing money that he had borrowed from time to time over a period of years for the purpose of purchasing stocks. On that date he gave the bank two new demand notes which, with a third note for $9,600, also representing money actually advanced to him, made up the total amount. The stock in question was pledged as collateral for the notes which, as written, bore interest at the rate of five per cent per annum, the figure "5" being inserted in the appropriate spaces. It is undisputed that about January 2, 1932, the defendant's note teller drew a pencil line through the figure "5" on the face of each note and inserted in pencil the figure "6." The evidence is conflicting on the question whether the plaintiff could be found to have assented to this change. After the figures were changed, the plaintiff paid four quarterly instalments of interest at the rate of six per cent. In the meantime the $9,600 note had been reduced to $5,020.38. On January 20, 1933, the value of the collateral was greatly reduced and demand was made for payment of the notes, and the plaintiff was informed that if they were not paid before January 24 the defendant would proceed to dispose of the security then in its hands. The plaintiff did not pay, and the defendant caused the collateral to be transferred to its name on May 15, 1933, when it purported to sell the collateral to itself, crediting the plaintiff's account with the value thereof computed

on the basis of the highest quotation for that date on the New York Stock Exchange. It advised the plaintiff of this, stating that " 'from sales to-day to the Manufacturers National Bank' it had received a total of $45,135.06 . . ." On October 17, 1935, the defendant sold the securities through its brokers for $66,146.44, and at that time the plaintiff's indebtedness to the bank, with interest computed at five per cent, was $68,178.91. No question is raised as to the accuracy of the figures hereinbefore stated. The principal contention of the plaintiff is that the notes were materially altered without the plaintiff's authority or assent, that they were thereby avoided, and that the sale of the stock was a conversion. It is not contended that the alterations were not made by an official of the defendant. The defendant contends, however, that the changes or notations were not material, being in the nature of memoranda and resulting from a practice of the defendant of revising the rates of interest payable on demand notes by the simple process of sending an interest card to the maker of the note stating what the interest amounted to for the preceding quarter, figured at the rate determined by the officer in charge of this work.

1. G. L. (Ter. Ed.) c. 107, § 147, so far as material, provides: "Where a negotiable instrument is materially altered without the assent of all parties liable thereon it is avoided, except as against a party who has himself made, authorized or assented to the alteration . . . ." Section 148, among other things, provides: "Any alteration which changes: . . . 2. The sum payable, either for principal or interest; . . . is a material alteration." We are of opinion that there was a material alteration of the notes in question. *Tower* v. *Stanley*, 220 Mass. 429, 435. *Broadway National Bank of Chelsea* v. *Heffernan*, 220 Mass. 247, 248. *Johnson Farm Loan Co.* v. *McManigal*, 288 Fed. 185. *Born* v. *Lafayette Auto Co.* 196 Ind. 399. *New York Life Ins. Co.* v. *Martindale*, 75 Kans. 142. Compare *Lewis* v. *Blume*, 226 Mass. 505, 507, 508. The case is distinguishable from *Mumford* v. *Coghlin*, 249 Mass. 184.

2. It could not have been ruled as matter of law that the

plaintiff assented to the alterations, but, as has already been said, upon conflicting evidence it was for the jury to determine whether, in fact, he did assent. It is unnecessary to recite the evidence in detail. It is true that the auditor found that the plaintiff never assented to the changes, but we think that the evidence, taken as a whole, made the question one for the jury.

3. Although the material alteration, unassented to by the plaintiff, would avoid the note as to him, nevertheless, unless the alteration was fraudulent, it would not presumptively cancel or extinguish the debt for which the note was given, and would not deprive the defendant of the benefit of any security that it may have taken. We think this follows from what was said in *Jeffrey* v. *Rosenfeld*, 179 Mass. 506, and cases cited. This rule finds support in other jurisdictions. *McConnon & Co.* v. *Brown*, 169 Ark. 954, 956. *Born* v. *Lafayette Auto Co.* 196 Ind. 399, 406. *Edington* v. *McLeod*, 87 Kans. 426, 429–430. *First National Bank of Sparta* v. *Yowell*, 155 Tenn. 430. *Milsaps* v. *Foster*, 163 Tenn. 308. *Idaho State Bank* v. *Hooper Sugar Co.* 74 Utah, 24. *Berg* v. *Poeppel*, 181 Wash. 207. See 6 Williston on Contracts (Rev. ed.) §§ 1893, 1911; Brannan's Negotiable Instruments Law (6th ed.) 1041–1043. There was evidence for the jury upon the question whether the alterations were fraudulently made. It could have been found that they were made in accordance with the practice of the defendant for the purpose of indicating to its officers and employees the amount of interest that the plaintiff would be expected to pay upon his notes; that interest cards were sent to the plaintiff upon which the interest at the rate of six per cent appeared; that the defendant regarded the changes as memoranda for its purposes in relation to the indebtedness of the plaintiff to it; and that there was no fraudulent intent. This evidence was to be weighed by the jury with the fact of the alteration itself. *Grapes* v. *Rocque*, 97 Vt. 531, 539. *Croswell* v. *Labree*, 81 Maine, 44, 46. *Valvano* v. *Valvano*, 117 N. J. L. 211. We think the case is distinguishable from cases like *Sherman* v. *Connecticut Mutual Life Ins. Co.* 222 Mass. 159, where the

court said, at page 160: "The fraudulent alteration by Williams of one of the genuine notes by trebling its face destroyed the value of that note in his own hands . . . . The fraudulent alteration of the note . . . not only destroyed its validity, but extinguished the maker's obligation to pay the consideration given for that note." The case at bar is distinguishable from *Wheelock* v. *Freeman*, 13 Pick. 165, for in that case it was held that it followed as a conclusion of law that the alteration was fraudulent.

4. We, therefore, have a case where (1) there are material alterations of the notes in question; (2) the plaintiff may have assented to them; (3) they may have been made without fraudulent intent, the plaintiff not assenting; (4) they may have been made with fraudulent intent, the plaintiff assenting; and (5) they may have been made with fraudulent intent, the plaintiff not assenting. Except for the question of the alterations being material, all the other issues involved were for the jury, and it follows that a verdict could not have been directed for the plaintiff, and also that there was error in directing a verdict for the defendant.

Inasmuch as there must be a new trial, it may be well to point out that in an action of tort, where there has been a wrongful conversion of pledged property, the defendant has an interest in the property to the extent of the sum due for which the property was held as security, and, as against the defendant, the plaintiff to that extent is not entitled to compensation. The pledgor, in such circumstances, may recover the fair market value of the pledged property less the amount of the debt for which it was pledged. *Briggs* v. *Boston & Lowell Railroad*, 6 Allen, 246, 253. *Farrar* v. *Paine*, 173 Mass. 58, 59, and cases cited. *Whitman* v. *Boston Terminal Refrigerating Co.* 233 Mass. 386, 391, and cases cited.

The plaintiff's exception to the denial of his motion for a directed verdict is overruled, and his exception to the allowance of the defendant's motion for a directed verdict is sustained.

*So ordered.*