MAX LEVOVSKY & another *vs.* MORRIS HORVITZ
(and four companion cases [1]).

Bristol.    October 28, 1940. — November 27, 1940.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Practice, Civil,* Auditor: recommittal, findings, trial on report only.
    *Damages,* For breach of contract.    *Contract,* Of employment, Con-
    struction.    *Pledge.*

No error appeared in the denial of a motion to recommit the report of
    an auditor, when the motion stated no specific grounds and was not
    supported by any affidavit as to facts.

Upon the hearing of an action solely upon the report of an auditor, whose
    findings of fact were not to be final, stating that his conclusions were
    based on subsidiary findings set forth, where there was no inconsist-
    ency among the subsidiary findings nor between any of them and the
    conclusions, the judge was warranted in finding the facts as stated
    by the auditor and in ordering judgment in accordance with his con-
    clusions.

An order of judgment for only four weeks' salary, based on findings by
    an auditor that the defendant had agreed that the plaintiff should
    be employed by a certain corporation at a certain salary so long as
    the plaintiff was a stockholder and that he secured other more lucra-
    tive employment for all but the first four weeks of a period between
    the time when he was suspended from his employment by the cor-
    poration and the time when he ceased to be a stockholder, disclosed
    no error.

Provisions of a contract in writing between the plaintiffs, sole stock-
    holders of a corporation, and the defendant, who had undertaken to
    refinance it, under which the stockholders sold part of their stock to
    the defendant and pledged the rest of it to him to secure certain
    money advanced by him, were construed to mean that the money
    advanced was a personal debt of the plaintiffs, and not a debt of the
    corporation, so that the defendant was justified in selling the pledged
    stock when the plaintiffs failed to make repayment to him.

There was no standing for a contention in this court by a plaintiff, pledgor
    of corporate stock, that a purchase by the pledgee at a foreclosure sale
    thereof was not authorized where the record disclosed no evidence of
    the terms of the pledge in that respect.

A contention that a sale in foreclosure of a pledge of stock in a closed
    corporation was for an inadequate price was without foundation where,
    although it appeared that the sale price was less than half of the book
    value of the stock, there was no evidence as to its market value.

───────────────

[1] The companion cases are George Levovsky *vs.* Morris Horvitz;  Max
Levovsky *vs.* Same;  Union Malt Products, Inc. *vs.* Max Levovsky & another;
Same *vs.* Max Levovsky.

CONTRACT OR TORT. Writ in the Superior Court dated February 12, 1937; also

TWO ACTIONS OF CONTRACT. Writs in the Superior Court dated April 1, 1937; also

TWO ACTIONS OF CONTRACT. Writs in the Third District Court of Bristol dated, respectively, May 8, and September 11, 1937.

Upon removal to the Superior Court of the two last named cases, the five cases were consolidated and referred to an auditor without an order that his findings should be final. In his report the auditor, after a recital of subsidiary facts, stated: "Upon these facts I conclude and summarize my findings in respect to the respective cases as follows:" and then followed a summary conclusion as to each case. Material portions of the conclusion as to the case of George Levovsky *v.* Horvitz (applicable, except as noted, also to that of Max Levovsky *v.* Horvitz) were as follows: That "from about November 1, 1936, the sales turned in by the plaintiff showed a distinct and steadily increasing falling off; that there was no explanation for such decrease in sales, and, by inference from that fact, I find that he was not faithful to the corporation; that he was never again employed; that he did not hold himself in readiness to perform service for it, but I further find that at the time of suspension on December 5, 1936, he was told that he would be notified when the suspension was over; that he immediately sought other employment and found it, beginning January 4, 1937, and for a period of forty-seven weeks earned compensation in excess of his salary under the agreement; that for the period from November 14 to December 5 his expenses were $44.88, to which he is entitled; that if he was wrongfully suspended he is entitled to his salary at the rate of $50 a week for four weeks." The auditor stated: "The same facts apply" as to Max Levovsky "except that I find that" he "was honest and faithful to the corporation and is entitled to four weeks' salary at $50 a week and expenses of $45.40."

The Levovskys did not file a claim for trial by jury and reservation of right to introduce further evidence within

the time allowed by Rule 88 of the Superior Court (1932) and a motion for leave to file such a document late was denied by the court.

The cases were heard together in the Superior Court by *Walsh,* J., who "found the facts as stated by the auditor . . . and made findings and orders for judgment" for the defendant in the first action; for the plaintiff in the sum of $244.88 in the second action; for the plaintiff in the sum of $245.40 in the third action; for the plaintiff in the sum of $1,085.89 in the fourth action; and for the plaintiff in the fifth action in the sum of $313.51. The Levovskys alleged exceptions.

*S. Rosenberg & F. E. Smith,* for Max Levovsky and another, submitted a brief.

*H. A. Lider,* (*R. D. Lider* with him,) for Morris Horvitz and another.

RONAN, J. These five cases were consolidated for trial and referred to an auditor, who filed a single report. In the Superior Court motions to recommit the report filed by Max Levovsky and George Levovsky were denied, and motions for judgment filed by the Union Malt Products, Inc., and Horvitz were allowed. The cases are here on exceptions to the denial of the motions to recommit and to the granting of motions for judgment.

Max and George Levovsky were brothers. For several years they had been engaged in the liquor business, which they conducted first as individuals and then through a corporation, the Union Malt Products, Inc., which they formed in 1935. The business of this corporation did not prove to be successful and it became apparent in 1936 that, unless new capital was secured, the corporation would have to be liquidated as it was insolvent. They then entered into a written agreement with Horvitz, dated May 22, 1936, which, among other things, provided that Horvitz should finance the settlement of certain claims against the corporation — some to be paid in full, including debts for which either Max or George Levovsky was personally obligated, and others to be paid in part; that any amount contributed by Horvitz in settling these claims and in providing capi-

tal in excess of $20,000 was to be considered as a loan to the corporation; that upon the settlement of these claims Horvitz was to receive fifty-one per cent of the shares of the corporation, and the remaining shares, all of which were held by Max and George Levovsky, were to be pledged to Horvitz "until such time as he shall receive one-half of whatever money it was necessary for him to advance to finance the settlement, and for working capital up to the $20,000 above mentioned"; that all dividends on the shares of Max and George Levovsky were to be assigned to Horvitz to be applied "to the reduction of the money to be paid by them to him"; that Horvitz was to release their stock "upon receipt from Max and George Levovsky or on their account of one-half of the money advanced by him as aforesaid"; that Max and George Levovsky and Horvitz were to be employed by the corporation as long as they should be stockholders and while their services to the corporation were honest and satisfactory at a salary of $50 a week, which was to be increased with gains in gross sales over certain amounts; and that Max and George Levovsky were to use their own automobiles in the performance of their duties for the corporation, which was to pay for the maintenance and operating expenses of these automobiles.

The auditor found that Horvitz paid creditors to the amount of $10,809.89 and paid the corporation $9,263.71; that the Levovskys, who owned all the stock of the corporation, transferred fifty-one shares to Horvitz outright for $10,000 of his investment, and the remainder of the stock, amounting to forty-nine shares, by way of pledge to secure the balance of $10,000 and any loans that might be made by Horvitz "which, under the agreement, I interpret to have been a loan to the Levovskys as individuals." The business was not prosperous, and the directors, on November 14, 1936, voted that Max Levovsky be replaced as general manager; that the use of the automobiles of Max and George Levovsky were no longer required; and that the corporation would no longer pay the operating expenses of their automobiles. The directors at a meeting on December 5, 1936, voted that Max and George

Levovsky "be suspended from the service of the corpo-
ration." At this meeting restrictions on the transfer of
the shares of stock pledged to Horvitz were waived. Hor-
vitz demanded payment of $10,000 for which the stock
was pledged, gave due notice of intention to sell the stock,
recorded the notice in the office of the city clerk, and gave
notice of the time and place of sale to the Levovskys.
Max Levovsky attended the sale and protested the sale
on the ground that the obligations secured by the pledge
were the debt of the corporation. The stock was sold at
auction to one Leen for $5,000, but Leen paid no money
and Horvitz considered it as $5,000 on account of $25,000
which he was to pay Leen when he married his daughter.
A new certificate was issued to Leen which he agreed to
transfer on request to Horvitz. The book value of a share
of stock was $234.46 but there was no evidence as to its
fair value.

The Levovskys contend that the findings of the auditor
were not warranted by the evidence; that the sale of the
pledged stock was fictitious and was for an inadequate price;
that the $20,000 advanced by Horvitz was the debt of the
corporation and not their indebtedness; that Horvitz had
wrongfully interfered with their employment; and that
he had no right to purchase the pledged stock. These
contentions do not apply to the two cases in which the
Union Malt Products, Inc., was the plaintiff, and leaves
open for our consideration the three remaining cases.

In the case of George Levovsky against Horvitz, which
was an action of contract to recover damages for breach
of the agreement made by Horvitz that the corporation
would employ him as long as he was a stockholder and as
long as he rendered honest and faithful service to the cor-
poration, the auditor found that he was not faithful to the
corporation; that he was suspended on December 5, 1936;
that he ceased to be stockholder on February 4, 1937; that
upon his suspension he immediately secured other employ-
ment where for forty-seven weeks he earned more than the
salary he had been paid by the corporation; that if he was
wrongfully suspended, he was entitled to his salary for four

weeks in the sum of $200; and that he is entitled to $44.88 for expenses. The judge ordered judgment for $244.88.

In the case of Max Levovsky against Horvitz, which was a similar claim to that of George, the auditor found "the same facts apply" as in the case of George except that the service rendered by this plaintiff "was honest and faithful to the corporation." He found the plaintiff was entitled to four weeks' salary at $50 a week and expenses amounting to $45.40 a total of $245.40, which was the amount for which judgment was ordered.

In the case of Max and George Levovsky against Horvitz, which was in contract or tort for wrongfully depriving the plaintiffs of rights in the corporation and the conversion of their stock, the auditor found for the defendant. The judge ordered judgment for the defendant.

The auditor's report did not set forth the evidence, and the contentions of the Levovskys, that his findings were not supported by the evidence, could have been tested by motions to recommit based upon this ground, but each of the motions filed by them merely requested that the cases be recommitted for further hearings. These motions set forth no specific grounds. The record does not indicate that they requested a report of any part of the evidence. They were not accompanied by an affidavit purporting to set forth any instance in which it was contended that the finding of the auditor was not based upon the evidence. There was no error in denying the motions to recommit. *Tobin* v. *Kells*, 207 Mass. 304, 309. *J. W. Grady Co.* v. *Herrick*, 288 Mass. 304, 310. *Rosenblum* v. *Ginis*, 297 Mass. 493, 496.

The auditor, after making subsidiary findings in considerable detail, summarized these findings in each case, and upon them based his general findings in that particular case. But the subsidiary findings that pertain to each of these cases are not inconsistent with each other nor with the conclusion reached by the auditor in that case. These findings must be accepted as true. There was no error committed by the trial judge in finding the facts as stated in the report and in ordering judgment in each case in ac-

cordance with the general findings of the auditor. *Cook* v. *Farm Service Stores, Inc.* 301 Mass. 564, 568.

In the cases of Max and George Levovsky against Horvitz the plaintiffs contend that they were entitled not only to receive damages for loss of wages for the weeks they were unemployed on account of Horvitz wrongfully interfering with their employment by the corporation, but also to have included the value of their contracts of employment with the corporation. There was nothing to show that, as far as the corporation was concerned, they were other than employees at will. Their declarations are based upon a breach of the written agreement of May 22, 1936, by which they and Horvitz agreed that they should be employed by the corporation as long as they rendered honest and faithful service and while they were stockholders. Their stock was sold on February 4, 1937. Upon the findings of the auditor setting forth their period of unemployment and their subsequent employment, it appears that the auditor adopted the correct measure of damages. *Cutter* v. *Gillette*, 163 Mass. 95. *Berry* v. *Donovan*, 188 Mass. 353. *Lopes* v. *Connolly*, 210 Mass. 487. *Hanneman* v. *I. Shlivek & Sons, Inc.* 235 Mass. 317.

In the case of Max and George Levovsky against Horvitz there was no error in the finding of the auditor that these plaintiffs were personally liable for the payment of $10,000 to Horvitz, and that their stock was pledged to secure the payment of this indebtedness. The provisions of the agreement of May 22, 1936, to which reference has already been made, show that the loans in this amount were to be considered the indebtedness of the Levovskys, and while the agreement provided for the release of their stock upon the payment of the indebtedness it makes no provision for its payment by the corporation or by any party other than the Levovskys. Furthermore, the dividends on the pledged stock were to be applied "to the reduction of the money to be paid by them to him." That was more than an authority to Horvitz to apply the dividends in reduction of the indebtedness. It was an acknowledgment of an indebtedness, the description of which,

if insufficient to show an express promise to pay, is at least adequate to support such a promise by implication. *Proctor* v. *Union Coal Co.* 243 Mass. 428. *Kirkley* v. *F. H. Roberts Co.* 268 Mass. 246. *Eastern Massachusetts Street Railway* v. *Union Street Railway,* 269 Mass. 329. *McNally* v. *Schell,* 293 Mass. 356.

The contention that Horvitz was not authorized to purchase the stock at the foreclosure sale is not open. The report of the auditor does not set forth a copy of the instrument assigning the stock to Horvitz or any other documentary evidence by which this assignment may have been effected. The auditor found that a new certificate was duly issued to Leen, who made the highest bid at the sale. If Leen was only a straw for Horvitz, then there is nothing in the report to indicate that the latter did not have the right to purchase the collateral. *Ballou* v. *Fitzpatrick,* 283 Mass. 336. *J. W. Grady Co.* v. *Herrick,* 288 Mass. 304. *Hunt Drug Co.* v. *Hubert,* 298 Mass. 195. *Knapp* v. *Amero,* 298 Mass. 517. *Murphy* v. *Smith, ante,* 64.

There is nothing in the contention that the stock was sold at an inadequate price. Max Levovsky attended the sale but did not bid. The auditor found that "a figure based only on an arithmetical computation from the figures in the balance sheets shows the book value to be at $234.46 per share"; that there was no market for these shares "nor any interest in them outside the parties"; and that the evidence was insufficient to enable him to find the fair market value of the stock. When the case was reached in the Superior Court on December 27, 1939, counsel for the plaintiffs stated that they desired to introduce evidence of the market value of the stock but that he was not prepared to offer evidence on this point then or on the next day, and requested a continuance until February, 1940, but the judge informed counsel that he would hear any evidence that he cared to submit the following day. No such evidence was introduced. The sale having brought less than the indebtedness, the judge was right in ordering judgment for the defendant. *Farrar* v. *Paine,* 173 Mass. 58. *Whitman*

v. *Boston Terminal Refrigerating Co.* 233 Mass. 386. *Benj. N. Moore & Sons Co.* v. *Manufacturers National Bank*, 261 Mass. 328. *Anderson* v. *Home National Bank of Brockton*, 290 Mass. 40. *Perry* v. *Manufacturers National Bank of Lynn*, 305 Mass. 368.

*Exceptions overruled.*