**SUPERIOR INSURANCE COMPANY, a corporation, Plaintiff,**

**v.**

**Geri RESTITUTO, aka G. Restituto aka Gerie Restituto, aka Jerry Restituto, and Annie M. Restituto, individually and as co-partners dba El Adobe Motel, Lawrence Andrini, Canadian Indemnity Company, Defendants.**

**No. 15307–C.**

United States District Court
S. D. California, Central Division.

Oct. 5, 1954.

John S. Bolton, Los Angeles, Cal., for plaintiff Superior Ins. Co.

Jack W. Bradley, Bakersfield, Cal., for defendants Restitutos.

DeForrest Home and Eugene Kelly, Los Angeles, Cal., for defendant Canadian Indemnity Co.

Morris B. Chain, Bakersfield, Cal., for defendant Andrini.

JAMES M. CARTER, District Judge.

This is an action for declaratory relief, brought by Superior Insurance Company against Geri Restituto and Annie Restituto, husband and wife, owners and operators of the El Adobe Motel at Bakersfield, California, Lawrence Andrini and the Canadian Indemnity Company.

On June 20, 1952, Andrini was injured at the swimming pool at the motel, brought suit against the Restitutos and recovered a judgment in the sum of approximately $7,000. Because of the matters set forth hereafter both Canadian and Superior refused to defend and the action was defended by the Restitutos at their expense. Conflicting claims by the various parties led to this action for declaratory relief. The jurisdiction of this court is based on diversity.

Since Leo V. Bray, an insurance agent, is the villain in the controversy, since the case concerns his activities and he has apparently absconded, some description is needed as to his status. From the files of the California Department of Insurance we find that from July 5, 1950 to May 7, 1951, United Insurance Agencies was a partnership of which Bray was a member. From the testimony of Mrs. Restituto, apparently one Barry-more, was the other partner in United Insurance Agencies. He went into the service and left the business with Bray.

Thereafter the business was incorporated, and United Insurance Agencies Inc. was issued an agents' corporate license by the California Insurance Department on July 12, 1951. Bray was authorized by the department to transact business under this license. Canadian filed an appointment of United Insurance Agencies Inc., as its agent with the California Insurance Department on June 25, 1951 and Superior Insurance Company appointed the United Insurance Agencies Inc., its agent on June 12, 1951.

On November 18, 1950, there was issued by Canadian to G. Restituto[1] a comprehensive bodily injury and property damage policy effective from November 21, 1950 to November 21, 1951. The policy was signed for Canadian by "United Insurance Agencies" by Leo V. Bray, authorized representative. On October 30, 1951, a renewal certificate was issued by Canadian and signed by "Leo V. Bray", authorized representative, for the period from November 21, 1951 to November 21, 1952.

### Canadian's Liability

Prior to Andrini's accident on June 20, 1952, on March 21, 1952, Canadian mailed to G. Restituto, dba El Adobe Motel, their insured, a notice of cancellation effective March 27, 1952, and obtained a return receipt from the post office for the piece of mail. G. Restituto and his wife claim they never received the notice but under the terms of the Canadian policy, the policy could be "cancelled by the company by mailing to the named insured at the post office address shown in this policy," written notice of cancellation. "The mailing of the notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period."

---

1. No issue is made of the fact that although the policy was issued to "G. Restituto dba El Adobe Motel," the property was owned and operated by Mr. and Mrs. Restituto.

About May 1, 1952, Canadian adjusted its account with United, set forth the debits and credits and sent the agent a check for $32.04, the balance due it on the account. The credit due Restituto for unearned premium as shown in the account was $123.23. United never repaid any amount to the Restitutos.

The question of Canadian's liability rests on the validity of the notice of cancellation, including the question of whether a refund of unearned premium was a condition precedent to cancellation.

### (a) *The Notice by Mail*

"* * * whether a notice of cancellation, sent to the address of the assured as stated in the policy, and pursuant to a provision in the policy stating that the mailing thereof shall be sufficient notice, is effective despite lack of receipt by the insured * * * has not been directly ruled upon in this jurisdiction." Naify v. Pacific Indemnity Co., 1938, 11 Cal.2d 5, 10, 76 P.2d 663, 666, 115 A.L.R. 476. The court said further, "In this simple form, the question may perhaps be answered in the affirmative." Truck Ins. Exchange v. Industrial Acc. Comm., 1951, 36 Cal.2d 646, 650, 226 P.2d 583, states there is a sharp conflict in the authorities generally but does not decide the problem. American B. M. Co. v. Indemnity Ins. Co., 1932, 214 Cal. 608, 615, 7 P.2d 305, states that the mailing of notice under a similar policy clause would have been sufficient, but then states that if the notice sent by mail was not received the cancellation is ineffective, citing Farnum v. Phoenix Ins. Co., 1890, 83 Cal. 246, 256, 23 P. 869, 870. In that case the policy was entirely different and provided for termination "on giving notice." There was no agreement that the mails might be used. 83 Cal. at page 251, 23 P. 869.

■ Since in this diversity case we must follow California law, we are left in the unhappy position of determining what California courts will say in the future on this question. Other jurisdic-

tions have answered the question squarely and have held the cancellation under similar clauses effective regardless of whether the notice was actually received. Gendron v. Calvert Fire Ins. Co., 1943, 47 N.M. 348, 143 P.2d 462, 149 A.L.R. 1310; Medford v. Pac. Nat. Fire Ins. Co., 1950, 189 Or. 617, 219 P.2d 142, 222 P.2d 407, 16 A.L.R.2d 1181; Trinity Universal Ins. Co. v. Willrich, 1942, 13 Wash.2d 263, 124 P.2d 950, 955, 142 A.L.R. 1.

■■ Parties to a contract may contract on such method of giving notice as they desire and unless public policy is contravened, the contract should be enforced as made. The use of the mails has become too well integrated into our economic and business life for such a public policy question to concern us. We conclude the notice by mail under the clause in question effected a termination even though the notice was never received by the insured.

### (b) *The Return of Premium*

The Canadian policy also provided, "Premium adjustment may be made at the time cancellation is effective. Premium for this policy being subject to determination upon audit the return due the insured, or any additional due the company, shall be adjusted upon computation thereof. The company's check or the check of its representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the named insured."

The question of the necessity for a refund of premium to effect a valid cancellation involves interpreting the language of the policy. The problem is well analyzed in Perry v. Manufacturers Nat. Bank, 305 Mass. 368, 25 N.E.2d 730, 127 A.L.R. 341.

■ (1) Where the policy provides that the insurer may cancel upon giving notice and refunding the unearned portion of the premium, cancellation is only effective upon refund. Quong Tue Sing v. Anglo-Nevada Assurance Co., 1890, 86 Cal. 566, 25 P. 58, 10 L.R.A. 144.

(2) Another type of policy provides for return of the unearned premium on surrender of the policy and for a retention of a pro rata premium only. Here there is a split of authority. The majority rule provides that this unearned premium must be returned to effect a cancellation. See cases in 127 A.L.R. 1341, 1348–1349. California follows the minority rule in such type of policy and the return of unearned premium is not a condition precedent to cancellation. Mangrum & Otter v. Law Union & Rock Insurance Co., 1916, 172 Cal. 497, 157 P. 239, L.R.A.1916F, 440. For other jurisdiction see 127 A.L.R. 1341, 1351–1352.

(3) Another type of policy provides for cancellation on notice and return of unearned premium on demand. The general rule is if the company refunds or states they will refund on demand, cancellation is complete and the refund of the unearned premium is not a condition precedent to cancellation. Naify v. Pacific Indemnity Co., 1938, 11 Cal.2d 5, 76 P.2d 663; Summers v. Travelers Ins. Co., 8 Cir., 1940, 109 F.2d 845, 127 A.L.R. 1341–1356.

(4) Akin to this latter classification is another type of policy with a clause more like that in the Canadian policy. In Medford v. Pacific National Fire Ins. Co., supra [189 Or. 617, 219 P.2d 144], the clause provided that " 'premium adjustment may be made at the time cancelation is effected and, if not then made, shall be made as soon as practicable after cancelation becomes effective.' " In Department of Labor and Industries v. Northwestern Mutual Fire Ass'n, 1942, 13 Wash.2d 288, 124 P.2d 944, 945, the clause provided for cancellation " 'with or without tender of the excess of paid premium * * * which excess if not then refunded, shall be refunded as soon

as practicable after cancellation becomes effective.' " In each case cancellation was held effective without the return of the premium.[2]

We conclude from the language of the policy and the cases above, that the cancellation by Canadian was effective, without return of premium as a condition precedent, on the date specified in the notice, to wit, March 27, 1952. However, since United was Canadian's agent, the fact that United held the $123.23 was not payment or tender to the Restitutos. They are entitled to a declaration of their right to a return of the unearned premium in the sum of $123.23 from Canadian.

### Superior's Liability

Bray in some manner not shown by the evidence, received notice of Canadian's cancellation of its policy as of March 27, 1952. We can only speculate on whether, (1) he received a copy of the notice from Canadian, (2) whether Canadian in some other manner notified Bray or (3) whether the Restitutos or some of their employees at the Motel received the notice of cancellation and turned it over to Bray. At any rate about March 27, 1952, Bray prepared and forwarded to Superior a document dated March 26th at 3 P.M., entitled, "Survey of Hazards and Applications for Comprehensive General-Automobile Liability policy." Automobiles were expressly excepted in this application. The document listed G. Restituto as the applicant. It requested coverage from March 27, 1952 to March 27, 1953. Beneath Bray's signature were the printed words of the form application, "Signature of applicant, his authorized representative or company's authorized representative." Stamped below appears "United Insurance Agencies Inc." Item 4 of the application reads: "During the past year

---

2. Gendron v. Calvert Fire Insurance, supra [47 N.M. 348, 143 P.2d 463], where the policy provided, 'Upon surrender of this policy, the company shall refund * * * the excess of paid premiums above the pro rata premium for the expired term when cancelation is made on the instance of the company.' The court relied upon Mangrum & Otter v. Law Union & Rock Insurance Co., supra and held tender of premium was not necessary to an effective cancellation.

no insured has cancelled any similar insurance issued to the applicant except as herein stated." No material was filled in in the blank following.

The application was received by Superior (date unknown) and employees of Superior testified that they orally advised Bray that coverage would not issue. However, Bray on April 15, 1952, wrote in pencil to Superior, "What has happened to our application for comprehensive general liability policy?" The memo carries a date 3/27 in red pencil which was apparently placed on it at the Company's offices and referred to the date of March 27, 1952 set forth in the application as the starting date of the coverage sought by Bray's application.

On May 10, 1952, Superior instructed one Tyrwhitt, an independent investigator, to "secure the inspection of these premises for us at your earliest convenience" listing the El Adobe Motel. Tyrwhitt made his report to Superior under date of July 18, 1952. Meanwhile Andrini was injured on June 20, 1952.

The agency contract between United Insurance Agencies Inc. and Superior is in evidence. United was authorized to write insurance for Superior, including general liability insurance, at certain fixed rates. The contract provided in part, "the agent shall not bind the Company on any risk in violation of the instructions of the Company expressed either orally or in writing." It further provided the agent "may not bind the said insurance company by oral agreement not evidenced in writing, nor bind this Company on any risk that has been cancelled or refused by another Company." United Insurance Agencies Inc. was obviously Superior's agent, subject to these and other limitations.

In so far as Superior is concerned the record shows no one acting in behalf of United Insurance Agencies Inc., except Bray. Mrs. Restituto never met Bray until after the loss occurred on June 20, 1952. Mr. Restituto knew Bray before the loss but never discussed insurance matters with him; he thinks he delivered to Bray certain checks in connection with the Canadian policy. Neither Mr. nor Mrs. Restituto according to their testimony, knew of the cancellation of the Canadian policy and neither knew of Bray's application, acting for United Insurance Agencies Inc., made to Superior. The court found at the conclusion of the trial that Superior had no liability based upon any contractual relationship, since none existed.

But the Restitutos contend that Superior is liable to them in tort, relying upon Stark v. Pioneer Casualty Co., 1934, 139 Cal.App. 577, 34 P.2d 731 and also contend for liability based on estoppel. The estoppel theory was first introduced at the trial and after the execution of the pretrial stipulation.

In the Stark case, supra, the insurance company agent solicited and obtained the application and the premium. The insurance company was then "'bound either to furnish the indemnity the state has authorized them to furnish or decline so to do within such reasonable time as will enable them to act intelligently and advisedly thereon.' * * * it must be assumed, and is not denied, that respondent relied upon its delivery to the insurer * * *." 139 Cal.App. at page 580, 34 P.2d at page 732. The court held the insurance company liable based on negligence and not on contract.[3]

In our case the Restitutos had paid to the United Insurance Agencies Inc., for

---

3. Accord: Smith v. Minnesota Mutual Life Ins. Co., 1948, 86 Cal.App.2d 581, 195 P.2d 457. See: Linnastruth v. Mutual Benefit etc. Ass'n, 1943, 22 Cal.2d 216, 219, 137 P.2d 833; annotations in 15 A.L.R. 1026, 27 A.L.R. 463, 75 A.L.R. 952, 32 A.L.R.2d 487, 511; 23 Cal.L.R. 215.

Canadian's policy, $188, and upon cancellation by Canadian, the account settled with United left $123.23 in the hands of United which it did not remit to the Restitutos. United Insurance Agencies Inc., (Bray) an agent for Superior, could have applied these funds to a new policy by Superior. The Superior policy, applied for by United Insurance Agencies Inc., (Bray) was one in which the premium was to be determined at a later date.

However, there is complete lack of any evidence in the record to show that United Insurance Agencies Inc., or Bray solicited the insurance from the Restitutos or to show that United or Bray was a general or special agent of the Restitutos for the purpose of securing new insurance.

■ Thus, we do not have the facts that existed in the Stark case, supra, and other cases applying the doctrine of tort liability, namely that the Company or its agent solicited the policy. There is an absence of any negotiations between United (Bray) and the Restitutos concerning the Superior policy. It would seem to the court grossly unfair to saddle Superior with a liability merely because United (Bray) Superior's agent unknown to the Restitutos, without soliciting them and without any authority conferred on him by Restitutos to secure insurance, had sent a communication to its (his) principal, Superior, applying for the insurance. It seems to the court this gap is unsurmountable and without further discussion takes the present case out of the rule of the Stark case and similar authorities.

■ Inherent in the holding and language of the Stark case, supra, was a reliance on.the fact that application had been made for insurance. Here there is a complete absence of any reliance by Restitutos and a complete absence of any of the elements of estoppel. The Restitutos did not rely on Bray's application; they knew nothing of it. Superior has no liability to Restitutos based on tort.